**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MERCO, INC., | CIVIL ACTION NO. 06-5182 (MLC) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| SOUTHERN CALIFORNIA EDISON COMPANY, | |
| Defendant. | |

**COOPER, District Judge**

Plaintiff, Merco, Inc. ("Merco"), commenced this action against defendant, Southern California Edison Company ("SCEC"), alleging, <u>inter</u> <u>alia</u>, that SCEC (1) breached its contract with Merco, and (2) was unjustly enriched by the work that Merco performed on the contract without compensation. (Dkt. entry no. 1, Compl.) SCEC moves to dismiss the complaint for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(2). (Dkt. entry no. 8.) Merco opposes the motion. (Dkt. entry nos. 11-14.) The Court, for the reasons stated herein, will grant the motion.

**BACKGROUND**

**I.  The Parties**

SCEC is a California corporation with its principal place of business in Rosemead, California. (SCEC Br., at 2; Compl., at ¶ 5.) It is an electric utility company serving 13 million people

in central, coastal, and southern California.  (SCEC Br., at 3.) It has offices in California, Nevada, and Washington, D.C.  (Id.) SCEC has neither offices, storage facilities, or other buildings, nor been registered to do business in New Jersey.  (Id. at 3-4.) Merco, in contrast, is a Delaware corporation with its principal place of business in Lebanon, New Jersey.  (Compl., at ¶ 4.)  It is a heavy construction contractor that specializes in the construction and rehabilitation of tunnels.  (Id.)

**II.  The Project**

SCEC's Power Production Department ("PPD") determined that it needed engineers to perform tunnel repair and restoration work in two phases in connection with the rehabilitation of the Kern River Powerhouse No. 1 tunnel system, which is owned by SCEC ("Project").  (SCEC Br., at 1, 4; see Merco Br., at 1 (noting that Merco and SCEC entered into a contract for the rehabilitation of the Kern River Powerhouse No. 1 tunnel system).)  PPD identified ten engineering contractors qualified to perform the tunnel construction and repair, including Merco. (SCEC Br., at 4.)  On February 28, 2005, the PPD's purchasing subsidiary sent a Proposal Request to each of the ten potential contractors via regular mail asking them to submit bids for the Project and inviting them to participate in a "jobwalk".  (Id. at

2

4-5; Merco Br., at 3.)[1]  Merco asserts that in response to the Proposal Request, it performed a detailed and extensive estimate at its New Jersey offices in preparation for submitting a bid. (Merco Br., at 3.)

    The jobwalk occurred in early March of 2005, and consisted of a series of meetings to discuss the potential obligations of the parties and a tour of the Kern River Powerhouse facilities. (SCEC Br., at 5.)  A Merco representative participated in the jobwalk.  (SCEC Br., at 5.)  Thereafter, SCEC sent three addenda to the Proposal Request to each of the ten contractors via overnight mail.  (Id.)  SCEC ultimately received four bids on the Project, including a bid from Merco on April 22, 2005 in the amount of $12,745,141.  (Id.; Merco Br., at 3.)  SCEC sent Merco a facsimile on May 23, 2005 requesting additional information and clarifications with respect to its bid.  (Merco Br., at 3.)

    Merco and one other finalist were selected from the four bids to attend a meeting in San Dimas, California on June 6, 2005.  (SCEC Br., at 5.)  Following the meeting, Merco was selected as the engineering contractor for the project, and SCEC prepared a purchase order.  (Id.)  SCEC management approved the Merco purchase order on June 21, 2005 and transmitted it to Merco in New Jersey via facsimile.  (Id.)

---

[1] Neither the Proposal Request, nor any subsequent agreement between the parties contained a forum selection clause.  (See Merco Br., at 13-14.)

Merco began working on the Project on or about June 15, 2005. (Merco Br., at 4.) Over the next ten months, SCEC and Merco communicated regularly by mail, overnight courier, telephone, and facsimile regarding the Project. (Id.) Merco's senior personnel traveled to the Project site in California on a regular basis. (Id. at 5.) All in-person meetings between SCEC and Merco's representatives occurred in California. (SCEC Br., at 5.) However, Merco contends that because SCEC sent six change orders, thirteen checks and payments, and at least 49 letters, e-mails, and faxes to Merco's New Jersey offices, SCEC cannot dispute that "Merco's New Jersey office provided significant aspects of the work for the planning, scheduling, accounting, management, and other aspects of the Project." (Merco Br., at 5.)

SCEC and Merco negotiated a price adjustment from May 26, 2006 to August 11, 2006 with respect to the second phase of the work Merco was to perform on the Project. (Id.) The parties exchanged draft agreements and communicated by telephone, e-mail and facsimile. (Id.) Merco ultimately executed Change Order No. 5 and the Phase 2 Settlement Agreement on August 11, 2006. (Id. at 6.) Nevertheless, on September 12, 2006, SCEC sent a letter to Merco's home office in New Jersey terminating the purchase order before Merco began the third phase of its work on the Project. (Id.; SCEC Br., at 2.)

4

**DISCUSSION**

SCEC argues, <u>inter</u> <u>alia</u>, that (1) "the facts in this case do not permit any reasonable inference that [SCEC] has had systematic and continuous contacts with New Jersey", and thus, SCEC is not subject to general personal jurisdiction there, and (2) "the relevant facts here fail to establish the necessary minimum contacts by [SCEC] with New Jersey to support the assertion of limited personal jurisdiction".  (SCEC Br., at 7-8.)  In contrast, Merco argues, <u>inter</u> <u>alia</u>, that (1) from February of 2005 through September of 2006, SCEC sent letters, telephoned, and engaged in other significant contacts with Merco in New Jersey sufficient to warrant the exercise of New Jersey's long-arm personal jurisdiction in connection with the Project, and (2) "SCEC purposefully availed itself of New Jersey, made continuous contacts with New Jersey and should not be allowed to now complain that jurisdiction is not fair."  (Merco Br., at 9, 19.)

**I.   Legal Standards Governing Personal Jurisdiction**

    **A.   Personal Jurisdiction Requires Minimum Contacts**

Rule 4(e) allows a district court to assert personal jurisdiction over a non-resident defendant to the extent permitted by the law of the state where the district court sits.  <u>See</u> Fed.R.Civ.P. 4(e).  New Jersey's long-arm statute, N.J.R. 4:4-4, has been interpreted as permitting the Court to exercise personal jurisdiction over a non-resident defendant to the

furthest extent constitutionally permissible.  <u>DeJames v. Magnificence Carriers, Inc.</u>, 654 F.2d 280, 284 (3d Cir. 1981); <u>see</u> <u>Avdel Corp. v. Mecure</u>, 277 A.2d 207, 209 (N.J. 1971) (noting that New Jersey's long-arm statute permits out-of-state service "to the utmost limits permitted by the United States Constitution").  However, the "due process clause of the fourteenth amendment of the United States Constitution limits the reach of long-arm statutes so that a court may not assert personal jurisdiction over a nonresident defendant who does not have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  <u>Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n</u>, 819 F.2d 434, 436-37 (3d Cir. 1987) (internal quotations omitted; alteration in original).

  The defendant's purposeful conduct and connection with the forum state must be such that the defendant "should reasonably anticipate being haled into court there."  <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980).  "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State[,] . . . but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  <u>Hanson</u>

6

v. Denckla, 357 U.S. 235, 253 (1958). The purposeful availment requirement ensures that a defendant will not be required to litigate in a forum solely as a result of "random," "fortuitous," or "attenuated" contacts, or the unilateral activity of another person. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985); see also Hanson, 357 U.S. at 253.

The plaintiff bears the ultimate burden of demonstrating that the defendant has sufficient contacts with the forum to justify the exercise of jurisdiction once the defendant raises a lack of personal jurisdiction defense. N. Penn Gas Co. v. Corning Nat. Gas Corp., 897 F.2d 687, 689 (3d Cir. 1990); Provident Nat'l Bank, 819 F.2d at 437. A plaintiff may meet this burden by establishing that the Court has either "general" or "specific" jurisdiction. Provident Nat'l Bank, 819 F.2d at 437. The plaintiff need only make a prima facie demonstration of jurisdiction by establishing with sufficient particularity the presence of contacts between the defendant and the forum. See, e.g., Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino, 960 F.2d 1217, 1223 (3d Cir. 1992). The Court, in examining whether the plaintiff has satisfied this prima facie burden, must resolve all disputes of material fact in favor of the non-moving plaintiff. See, e.g., Carteret Sav. Bank, FA v. Shushan, 954 F.2d 141, 142 n.1 (3d Cir. 1992).

### 1. General Jurisdiction

General jurisdiction exists when the defendant has continuous contacts with the forum state that are unrelated to the events forming the basis of the cause of action.  See Provident Nat'l Bank, 819 F.2d at 437; Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp., 825 F.Supp. 1195, 1209 (D.N.J. 1993).  To establish general jurisdiction the plaintiff must show significantly more than mere minimum contacts with the forum state.  Id.; Database Am., Inc., 825 F.Supp. at 1209.  A plaintiff bears the "rigorous" burden of demonstrating that the defendant has "continuous and systematic" contacts with the forum state such that the defendant should expect to be haled into court on any cause of action.  Helicopteros Nacionales de Colom., S.A. v. Hall, 466 U.S. 408, 414-16 & 415 n.9 (1984); Provident Nat'l Bank, 819 F.2d at 437.  The facts required to establish general jurisdiction must be "extensive and persuasive."  Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas, 675 F.2d 587, 589 (3d Cir. 1982); Decker v. Circus Circus Hotel, 49 F.Supp.2d 743, 747 (D.N.J. 1999).

### 2. Specific Jurisdiction

Specific jurisdiction over a defendant exists when the defendant has purposefully directed activities at residents of the forum and the claim is directly related to or arises out of those activities.  Burger King Corp., 471 U.S. at 472; Dollar

8

Sav. Bank v. First Sec. Bank, 746 F.2d 208, 211 (3d Cir. 1984). The activities must "rise to the level of minimum contacts with the state, such that the defendant should reasonably anticipate being haled into court there." Exton v. Our Farm, Inc., 943 F.Supp. 432, 438 (D.N.J. 1996). Jurisdiction is proper where the contacts proximately result from the defendant's own actions, which create a substantial connection with the forum. Burger King Corp., 471 U.S. at 475. Thus, although a defendant's entrance into the forum state enhances the defendant's affiliation with that forum, physical entrance into the forum is not required for the exercise of specific jurisdiction. Id. at 476. The Court, if determining that the defendant has purposefully established minimum contacts with the forum state, must then decide whether the exercise of personal jurisdiction comports with "fair play and substantial justice." Id.

**B.   Minimum Contacts and a Non-Resident Purchaser**

Courts distinguish between non-resident sellers and non-resident purchasers when evaluating minimum contacts for purposes of personal jurisdiction. Minimum contacts sufficient to exercise personal jurisdiction over a non-resident seller exist when the seller delivers products into the stream of commerce with the expectation that those products will be bought by consumers in the forum state. World-Wide Volkswagen Corp.,

444 U.S. at 297-98.  However, that a non-resident purchaser caused activity in the forum state by placing an order with a resident does not establish sufficient minimum contacts to permit the exercise of personal jurisdiction over the non-resident purchaser.  See Lakeside Bridge & Steel Co. v. Mt. State Constr. Co., Inc., 597 F.2d 596, 603 (7th Cir. 1979) (stating that although the defendant caused the activity in the forum state by placing an order with the resident plaintiff, the parties' contract left the plaintiff "in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally").

    A contract between a resident and a non-resident alone does not automatically establish sufficient minimum contacts to exercise jurisdiction over the non-resident.  Burger King Corp., 471 U.S. at 478.  Further, informational communications in furtherance of a contract are also insufficient to establish the requisite minimum contacts.  BP Chem. Ltd. v. Formosa Chem. & Fibre Corp., 229 F.3d 254, 260 (3d Cir. 2000); see W.F.C. Co., Inc. v. Delta Reinforced Plastic Structures, Inc., No. 88-6903, 1990 U.S. Dist. LEXIS 13612, at *8-*10 (E.D. Pa. Oct. 11, 1990) (concluding that neither the party who prepared the subcontract specifications nor the party who accepted the subcontract bids "purposefully availed" itself of conducting business in Pennsylvania by sending the bid specifications to the plaintiff

in that state).  Accordingly, in determining whether a defendant who entered into a transaction with a resident of the forum state should be subject to personal jurisdiction there, the Court should consider the previous negotiations between the parties, contemplated future consequences of the contract, terms of the contract, and parties' actual course of dealing.  BP Chem. Ltd., 229 F.3d at 260.

**II.  Legal Standards Applied Here**

  **A.  General Jurisdiction**

This Court cannot exercise general jurisdiction over SCEC because SCEC does not have sufficient contacts with New Jersey.  SCEC is a California corporation with its principal place of business in Rosemead, California.  (Compl., at ¶ 5.)  It does not have any offices or other facilities in New Jersey.  (SCEC Br., at 3.)  Additionally, SCEC is not registered to do business, does not have any employees, and does not advertise or engage in any business activities in New Jersey.  (Id. at 3-4.)  Instead, it provides utility services only to customers in California.  (Id. at 3.)  Thus, because Merco cannot establish that SCEC has continuous and systematic contacts with New Jersey, general jurisdiction over SCEC does not exist.  See Hall, 466 U.S. at 414-16.

## B. Specific Jurisdiction

Merco argues that this Court can exercise specific jurisdiction over SCEC because SCEC "purposely directed its activities to New Jersey sufficient to satisfy the New Jersey long-arm statute and due process." (Merco Br., at 7.) Merco emphasizes that (1) SCEC "sent letters, placed phone calls, and engaged in other significant contact" with it in New Jersey, and (2) this action arises from SCEC unjustifiably terminating Merco through a communication sent to Merco in New Jersey. (Id. at 9, 12.) Merco asserts that, although courts have declined to assert jurisdiction over a "passive" buyer who "has done no more than place orders within the forum state, accepting the seller's terms and prices", SCEC dictated the terms and conditions of its purchase order with Merco. (Id. at 13.) Accordingly, Merco contends that, as a result of SCEC's requirements, its staff performed extensive pre- and post-contract work at its New Jersey offices. (Id. at 14.) Lastly, Merco contends that asserting specific jurisdiction over SCEC here comports with fair play and substantial justice. (Id. at 19.) However, contrary to Merco's assertions, these actions do not create a meaningful connection to New Jersey sufficient to justify the exercise of jurisdiction over SCEC.

SCEC did not negotiate or have any business relationship with Merco before the transaction at issue here. (SCEC Reply

12

Br., at 2; dkt. entry no. 8-4, Fallesen Aff., at ¶ 10.)  See BP Chem. Ltd., 229 F.3d at 260 (stating that the Court should consider the previous negotiations of the parties in determining whether the defendant is subject to specific jurisdiction). Further, its decision to contract with Merco, a Delaware corporation with its principal place of business in New Jersey, in connection with the Project is not sufficient to establish minimum contacts with New Jersey.  See Lakeside Bridge & Steel Co., 597 F.2d at 603.

In W.F.C. Co., Inc., the Western Carolina Sewer Authority ("Authority") awarded a subcontract for the manufacture and installation of odor control covers at a sewage plant to Delta Reinforced Plastic Structures, Inc. ("Delta").  1990 U.S. Dist. LEXIS 13612, at *2-*3.  The plaintiff, an unsuccessful bidder on the subcontract, commenced an action in Pennsylvania against the Authority, Delta, and Jordan, Jones & Goulding, Inc. ("JJ&G"), the project engineer that drafted the subcontract specifications, alleging that they collaborated to deprive the plaintiff of the subcontract by failing to adhere to the bidding procedures.  Id. at *2-*3.  The court, in determining the issue of personal jurisdiction over the Authority, noted, inter alia, that (1) the subcontract in question was to be performed in South Carolina, and (2) there was no evidence that the Authority directed JJ&G to contact anyone in Pennsylvania, and thus, "the

Authority could not reasonably expect to be haled into court in Pennsylvania". Id. at *8. Moreover, with respect to JJ&G, the court stated that (1) there is nothing in its correspondence with the plaintiff that indicates that it intended to avail itself of the benefits of Pennsylvania law, and (2) its "only forum-related activity in connection with the cause of action was an exchange of correspondence with plaintiff concerning the specifications for the project[, and] [s]uch correspondence does not form the minimum contacts required to establish in personam jurisdiction." Id. at *9-*10.

SCEC sent bid specifications to ten prospective contractors, and only Merco was located in New Jersey. (SCEC Br., at 4; dkt. entry no. 8-4, Fallesen Aff., at ¶ 5.) Also, the Project underlying the parties' agreement was located in California and all in-person meetings between their representatives occurred in California. (SCEC Br., at 5.) Thus, like the W.F.C. defendants, SCEC's only forum-related activities were exchanging correspondence with Merco in New Jersey. However, SCEC's use of interstate mail, e-mail, and telephone service to negotiate the contract and discuss the Project's progress does not qualify as sufficient contacts to confer jurisdiction. See W.F.C. Co, Inc., 1990 U.S. Dist. LEXIS 13612, at *9-*10; BP Chem. Ltd., 229 F.3d at 260. Thus, the course of dealing between the parties does not suggest that SCEC

14

is subject to specific jurisdiction here.  See BP Chem. Ltd., 229 F.3d at 260.

SCEC does not provide electrical services in New Jersey, and none of its employees are physically present here.  (SCEC Br., at 3-4.)  Further, the purchase order between SCEC and Merco did not require Merco to perform any activities at its New Jersey offices, but instead required Merco to perform certain tunnel renovations in California.  (See Merco Br., at 1 (noting that the contract between SCEC and Merco was for the rehabilitation of a tunnel system in California).)  Any future consequences of the parties entering into the Purchase Order for tunnel renovations would be felt in California, where the Project was to be performed.  Thus, SCEC did not itself create a connection with New Jersey by requiring Merco to perform tasks related to the Project in New Jersey.  See Burger King Corp., 471 U.S. at 475 ("Jurisdiction is proper . . . where the contacts proximately result from actions by the defendant himself that create a 'substantial connection' with the forum State." (emphasis in original)).  Instead, Merco unilaterally chose to perform Project-related work in New Jersey.  See Lakeside Bridge & Steel Co., 597 F.2d at 603.  Therefore, the terms and the future consequences anticipated by the purchase order did not indicate that SCEC could be subject to personal jurisdiction in New Jersey.  See BP Chem. Ltd., 229 F.3d at 260.

15

SCEC did not purposefully direct its actions at residents of New Jersey, and its actions have not created a substantial connection with New Jersey such that the exercise of jurisdiction over it would satisfy "traditional notions of fair play and substantial justice."  Int'l Shoe Co. v. Wash., 326 U.S. 310, 320 (1945).  Thus, this Court cannot exercise personal jurisdiction over SCEC.

## CONCLUSION

The Court, for the reasons stated supra, will (1) grant the motion, and (2) dismiss the complaint pursuant to Rule 12(b)(2).  The Court will issue an appropriate order and judgment.


        s/ Mary L. Cooper
    **MARY L. COOPER**
    United States District Judge